UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA,

   -against-                                                         17 CR 350 (KBF)

RAZHDEN SHULAYA, et al.,

                Defendants.

-------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT IVAN AFANASYEV'S PRETRIAL MOTIONS**

 

LAW OFFICES OF JEFFREY LICHTMAN
11 East 44th Street
Suite 501
New York, New York 10017
Ph:  (212) 581-1001
Fax: (212) 581-4999

*Attorneys for Ivan Afanasyev*

**PRELIMINARY STATEMENT**

Defendant Ivan Afanasyev respectfully submits this memorandum in support of his pretrial motions for an Order: i) requiring the government to provide a bill of particulars pursuant to Fed. R. Crim. P. 7(f); ii) suppressing geolocation and cell-site information obtained by the government; iii) requiring the government to provide a list of the names and addresses of the individuals that it intends to call as witnesses in its case-in-chief pursuant to United States v. Cannone, 528 F.2d 296 (2nd Cir. 1975) and United States v. Lino, No. 00 CR 632 (WHP), 2001 WL 8356 (S.D.N.Y. December 29, 2000); iv) requiring the government to provide early notice of its intent to use Rule 404(b) evidence pursuant to United States v. Nachamie, 91 F. Supp.2d 565 (S.D.N.Y. 2000); v) requiring the government to abide by its obligations pursuant to Brady v. United States, 373 U.S. 83 (1963); vi) granting leave to file additional pretrial motions once the considerable outstanding discovery has been received; and vii) adopting the motions of his codefendants to the extent that they are applicable to him.

**INTRODUCTION**

Ivan Afanasyev is charged pursuant to a June 6, 2017 Indictment with one count of Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One); one count of Conspiracy to Transport and Sell Stolen Goods, in violation of 18 U.S.C. § 371 (Count Two); and one count of Conspiracy to Commit Fraud Relating to Identification Documents, in violation of 18 U.S.C. 1028(f) (Count Four). Generally, the government alleges that defendant Afanasyev acted together with individuals from the "Shulaya Enterprise" and engaged in a fraud that involved counterfeit credit cards and stolen personal identifying information and goods. See Indictment at ¶¶ 1, 11aa.

First, while Count One – which charges Racketeering Conspiracy – includes a "Means and Methods" section generally describing the conduct of the "Shulaya Enterprise" (id. at ¶ 8), it does not allege any criminal conduct specifically committed by defendant Afanasyev.  Further, while the "Overt Acts" section of the Indictment which follows references the defendant's participation in a single telephone call in furtherance of the conspiracy (id. at ¶ 11aa) – an examination of both this call and the transcription produced by the government reveals that the call does not square with its description in the Indictment.  Similarly, Count Four of the Indictment – which charges the fraud relating to identification documents – fails to specify a single overt act committed by the defendant.  Accordingly, with regard to Mr. Afanasyev's participation in the conspiracies alleged in Counts One and Four, the government should be required to provide the defendant with a bill of particulars so that he may fully understand the charges against him and prepare for trial.

Second, the government sought and received authorization to track Mr. Afanasyev through the GPS on his cellular telephone for a 45 day period beginning on May 31, 2017.  See generally May 31, 2017 Geolocation and Cell-Site Information Order signed by the Honorable Kathleen Parker, attached as Exhibit A.  A review of the application submitted by the government for this order, however, finds it to be severely lacking in order to justify the significant level of intrusion imposed on the defendant's privacy, and accordingly, the results of the GPS location monitoring warrant should be suppressed.

Third, based on both the aforementioned lack of detail provided by the Indictment and any credible threat against potential government witnesses, Mr. Afanasyev requests that the government be compelled to provide a witness list for trial.  And finally, the defendant

respectfully requests: a) early disclosure of any Rule 404(b) evidence that the government intends to introduce at trial; b) pretrial disclosure of all information falling within the purview of Brady and its progeny; and c) leave to file additional pretrial motions upon receipt of the outstanding *six terabytes* of discovery materials.

## ARGUMENT

### POINT I

**THE GOVERNMENT SHOULD PROVIDE A BILL OF PARTICULARS**

Mr. Afanasyev is entitled to certain particulars, without which he will be "unable to prepare adequately for trial," or "interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2nd Cir. 1987).  Here, absent certain specifics concerning Mr. Afanasyev's own participation in the conduct alleged in Counts One and Four of the Indictment, the defendant can only guess as to the specifics with which he is charged.  And with no notice of the charges' substance, how can Mr. Afanasyev hope to defend himself, let alone invoke his double jeopardy rights in any future prosecution?  Plainly, he cannot.  Accordingly, unless the government delineates the particular conduct embraced by Counts One and Four, Mr. Afanasyev could be vulnerable to multiple prosecutions for the same activities.[1]

Worse still, on the threadbare allegations of Counts One and Four as they relate to Mr. Afanasyev, the government could vary the charges at will.  That is, the government would be able to secure a conviction "based on evidence of [conduct] completely divorced from that upon

---

[1] Pursuant to Local Rule 16.1, counsel first requested particulars from the government concerning this issue.  See November 16, 2017 Letter of Jeffrey Lichtman, attached as Exhibit B.

3

which the grand jury based its indictment." United States v. Tomasetta, 429 F.2d 978, 980 (1st Cir. 1970).  Once again, exposure to such variances would eviscerate the Fifth Amendment's Notice and Presentment Clause.  With these themes in mind, we request that the government specify the defendant's conduct as it relates to Counts One and Four of the Indictment.  Simply put, only a single overt act is noted in the Indictment in support of the claim that Mr. Afanasyev took part in the racketeering conspiracy alleged in Count One, and no overt act is alleged to support Count Four's conspiracy relating to fraudulent identification documents.  See Indictment at ¶¶ 11aa, 19-24.

Specifically, with regard to Count One, the Indictment alleges that Mr. Afanasyev took part in an intercepted telephone conversation regarding the use of counterfeit credit cards at local New York City businesses.  Id. at ¶ 11aa.  No other details concerning the defendant's participation in the racketeering conspiracy are provided.  Further, a comparison of this call's transcription in the line sheets provided by the government to its description in the Indictment reveals significant discrepancies.  Indeed, while the Indictment alleges that on the call, Mr. Afanasyev "requested" that defendant Dzhanashvili "oversee a team of lower-level associates of the Shulaya Enterprise who would engage in the use of counterfeit credit cards at local businesses in and around the New York City area," (id. at ¶ 11aa) the transcript provided by the government in the line sheets reveals no specific request to "oversee lower-level associates" (id.), no mention of "local businesses" (id.) and no mention of New York City.  See Bates US_010644 through US_010647, attached as Exhibit C.  If anything, the call references the payment of certain monies within three weeks, an individual's sick father, and another individual who is not answering his phone.  See id.  Further, even if the allegations in Count One were accepted at face

4

value, they would still not support his alleged participation in the conspiracy alleged in Count Four, which alleges a fraud relating to false identification documents.

As there are no other purported acts ascribed to Mr. Afanasyev with regard to Counts One or Four, the defense is left without the ability to determine what criminal conduct the defendant is accused of committing. Consequently, Mr. Afanasyev is entitled to information concerning the specific acts ascribed to him, the dates and locations of those acts, and any individuals who is alleged to have acted with.

To be sure, courts routinely order the disclosure requested here – especially where the conspiracy is as nebulous and open-ended as this one. See, e.g., United States v. Santiago, 174 F.Supp.2d 16 (S.D.N.Y. 2001) (Marrero, J.) (in charged conspiracy, court ordered particulars including how defendant was alleged to have participated in conspiracy, approximate dates and times of that participation, and identities of any unindicted co-conspirators with whom defendant participated in conspiracy); Lino, 2001 WL 8356, at *12 ("[r]equests for names of unindicted co-conspirators are fairly common and often are granted by district courts"); United States v. Taylor, 707 F. Supp. 696, 699 (S.D.N.Y. 1989); United States v. Feola, 651 F.Supp. 1068, 1133 (S.D.N.Y. 1987), aff'd, 875 F.2d 857 (2nd Cir. 1989) (Table), cert. denied, 493 U.S. 834 (1989) (both directing the government to provide the names of unindicted coconspirators in a bill of particulars); United States v. Torres, 901 F.2d 205, 233-34 (2d Cir. 1990) (District Court has discretion to require same), cert. denied, 498 U.S. 906 (1990); United States v. Wilson, 1997 WL 10035 (S.D.N.Y. Jan. 10, 1997) (LMM); United States v. Espy, 1996 WL 637759 at *1 (E.D. La. 1996); United States v. DeGroote, 122 F.R.D. 131, 137-39 (W.D.N.Y. 1988). Indeed, without

such information, the government could convict on an entirely different conspiracy than the one charged in the Indictment. And the defendant would be powerless to object.

Accordingly, the government should be compelled to provide particulars as they relate to Mr. Afanasyev's alleged crimes.

## POINT II

**THE GOVERNMENT FAILED TO ESTABLISH A SUFFICIENT BASIS TO ACCESS TO REAL TIME GPS MONITORING OR STORED CELL SITE RECORDS**

For a period of approximately 45 days beginning May 31, 2017, the FBI received a GPS "ping" from Mr. Afanasyev's cellular telephone which provided them with the defendant's precise location. See Ex. A, at p. 3. Additionally, the FBI was granted access to stored cell site records for the 5-day period immediately preceding the May 31, 2017 Order. Id. at p. 4. Because the government failed to set forth a sufficient basis for such a protracted search of the defendant's cellular telephone and invasive breach of his privacy, all evidence seized thereto and derived therefrom must be suppressed. See United States v. Jones, 565 U.S. 400, 430 (2012) (long-term use of GPS monitoring impinges on expectations of privacy).

A.  Applicable Law

At the very least, in order to secure a warrant, the government is required to establish probable cause to believe that the resulting search will reveal evidence of criminality. U.S. Const. amend. IV. Further, searches that involve the monitoring of an individual through an electronic item which provides the government with GPS or cell-site information touch on specific privacy interests. Jones, 565 U.S. at 415; In re U.S. for an Order Authorizing the Release of Historical Cell-Site Information, 809 F.Supp.2d 113, 116 (E.D.N.Y. 2011)

("Prolonged surveillance reveals types of information not revealed by short-term surveillance ... cell-site-location records present even greater constitutional concerns than [GPS]"). When faced with the monitoring of electronic devices, including an individual's location through the surreptitious collection of geolocation data, courts employ the two-step analysis provided in Katz v. United States, asking: i) whether the defendant manifested a subjective expectation of privacy, and ii) whether society is willing to recognize that expectation as reasonable. 389 U.S. 347, 360 (1967); see also California v. Ciraolo, 476 U.S. 207, 211 (1986); Smith v. Maryland, 442 U.S. 735, 740 (1979).

At present, there is not a strong consensus among federal courts as to whether a reasonable expectation of privacy exists regarding the GPS information contained in an individual's cellular telephone. Meisler v. Chizanowski, No. 3:12 CV 487 (WGC), 2013 WL 5375524, at *20 (D. Nev. Sept. 24, 2013) ("After surveying the cases that have confronted the issue [of GPS data and cell site information], it goes without saying that the law with respect [to this issue] ... is not clearly established.");cf United States v. Caraballo, 963 F.Supp.2d 341, 354 (D. Vermont 2013) (since GPS location is obtained regardless of whether a person is in public or private, no argument can be made that the information is readily available to third parties to ease privacy concerns). In the Southern District of New York, the determination as to whether an individual has a reasonable expectation of privacy also takes into consideration the circumstances of the investigation regarding the person whose GPS information is being recorded. Cucuta v. New York City, 25 F.Supp.3d 400, 416 (S.D.N.Y. 2014) (holding that the issuance of the arrest warrant for the defendant undermined a privacy interest in geolocation data).

Taking up the issue of warrantless GPS tracking of a defendant's vehicle – itself less invasive than tracking his cellular telephone – the United States Supreme Court in Jones held that the placement of a GPS device on a person's automobile constitutes a search and violates the protections of the Fourth Amendment if completed without a warrant. 565 U.S. at 404. In Jones, the Government had secured a warrant to place a GPS device on a vehicle registered to the defendant's wife, but failed to install it in the time permitted by the authorizing warrant. Id. at 403. When the GPS device was finally in place, agents tracked the vehicle for 28 days and eventually arrested and charged the defendant with narcotics related offenses. Id. Addressing potential problems due to the *length* of the surveillance, the concurring opinion of Justices Alito, Ginsburg, Breyer and Kagan in Jones offered the following insight:

> [T]he use of longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy. For such offenses, society's expectation has been that law enforcement agents and others would not—and indeed, in the main, simply could not—secretly monitor and catalogue every single movement of an individual's car for a very long period. In this case, for four weeks, law enforcement agents tracked every movement that respondent made in the vehicle he was driving. *We need not identify with precision the point at which the tracking of this vehicle became a search, for the line was surely crossed before the 4–week mark*.

Id. at 430 (emphasis supplied). It is therefore clear that the lengthy and unchecked monitoring of a defendant via GPS is an issue with which courts – and society at large – should be deeply concerned.

8

B.   Discussion

Although the People admittedly obtained a warrant to track the defendant's movements via his telephone for the 45 day period leading up to July 15, 2017, probable cause for such a prolonged intrusion was never established.

Specifically, on May 31, 2017, the People were granted access to real time disclosure of cell-site records and the geolocation of the defendant's cellular telephone. See Ex. A at pp. 3-4. The application for the order consisted entirely of the affidavit of Special Agent Hanratty, who proffered that "the requested information will lead to evidence of violations [sic] multiple violations of the criminal laws ...." See May 31, 2017 Affidavit of Special Agent Hanratty, attached as Exhibit D, at p. 5. To establish probable cause, Special Agent Hanratty offered the following information to the issuing justice:

- Ivan Afanasyev – identified as the owner of Cellphone-11 – was involved in a scheme to deliver stolen goods, as well as a counterfeit credit credit card and forged check scheme. Discussions were intercepted concerning forged paperwork (invoices and bills of lading) that the enterprise believed would be necessary for the stolen property. Id. at pp. 21-22.

- When two members of the criminal enterprise were arrested in connection with the counterfeit credit card fraud scheme, Mr. Afanasyev spoke on the phone to Zurab Dzhanashvili and asked about how Dzhanashvili's business was progressing. Id. at p. 27.

Notably, although though the government thereafter asserted that there was probable cause to believe that Mr. Afanasyev was using the phone related to (347) 394-8246 in furtherance of the Shulaya Enterprise – and that the GPS information would provide "relevant" and "significant information" as to his and others' locations – they entirely failed to demonstrate why

9

it was necessary to track his every movement in this instance and specifically what it would achieve beyond vague and boilerplate generalizations. See id. at p. 5. Taken together, the government's proffer merely suggested that the defendant was involved in a scheme to aid in the transportation and sale of stolen merchandise and that he expressed concern over the arrest of two alleged members of the criminal organization. See id. at pp. 21-22, 27. Nothing was offered to substantiate the need for the 45 days of unchecked 24-hour monitoring that followed pursuant to that order. Moreover, the People failed to explain in any manner *how* his stored cell site records for the prior 5 days would be relevant and material to the investigation, much less how probable cause was established. See 18 U.S.C. § 2703(d).

Once the above-referenced order expired on July 15, 2017, the government did not seek its extension. Further, to the extent that the warrant permitted precision location information, including GPS data, E-911 Phase II data, and latitude-longitude data, cell city data, cell tower and sector data as indicated in the order (Ex. A, at p. 3), probable cause to support such an intrusion could not have been established as the application and supporting affidavit were completely silent to its use and aims. See, generally, Ex. A.

Accordingly, any results of the realtime GPS monitoring and the 5 days of historic cell-site records provided by T-Mobile should be suppressed. Jones, 565 U.S. at 419.

### POINT III

**THE GOVERNMENT SHOULD BE COMPELLED TO DISCLOSE ITS LIST OF WITNESSES**

In addition to the particulars concerning the defendant's alleged conduct, the government should be compelled to provide a list of its witnesses due to the difficulties the defendant faces in

preparing for trial, the lack of detail provided in the Indictment (see, infra, at **POINT I**) and the government's inability to make a credible claim that its witnesses will be subject to intimidation or danger should their identities be revealed.

There can be no doubt that a district court has the discretion to compel the pretrial disclosure of government witnesses.  United States v. Triana-Mateus, No. 98 Cr. 958 (SWK), 2002 WL 562649 (S.D.N.Y. April 15, 2002).  The burden, however, rests on the defendant to make a "specific showing that disclosure [is] both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case."  Cannone, 528 F.2d at 300-01. And in considering whether to order the pretrial disclosure of the government's list of witnesses, courts in this district have frequently looked to the factors set out in United States v. Turkish, 458 F. Supp. 874, 881 (S.D.N.Y. 1978):

> (1) Did the offense alleged in the indictment involve a crime of violence?  (2) Have the defendants been arrested or convicted for crimes involving violence? (3) Will the evidence in the case largely consist of testimony relating to documents (which by their nature are not easily altered)? (4) Is there a realistic possibility that supplying the witnesses' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial, or will be unwilling to testify at trial? (5) Does the indictment allege offenses occurring over an extended period of time, making preparation of the defendants' defense complex and difficult? (6) Do the defendants have limited funds with which to investigate and prepare their defense?

United States v. Rueb, No. 00 CR 91 (RWS), 2001 WL 96177 (S.D.N.Y. February 5, 2001).

Application of these factors to the instant case leads to the determination that the requested information should be disclosed.  While Count One alleges that "members and associates of the Shulaya Enterprise conspired to threaten, assault, and intimidate persons," the

violent acts allegedly carried out by members of the Shulaya Enterprise are relatively minor. Indictment at ¶ 8a. Specifically, the Indictment alleges that Rahzden Shulaya assaulted an individual over the failure to remit sufficient tribute (id. at ¶ 11i) and assaulted a former employee of his illegal gambling establishment (id. at ¶ 11m). Additionally, Zurab Dzhanashvili is accused of attempting to engage in a scheme to drug and rob an unnamed individual (id. at ¶ 11cc). These acts aside, the great bulk of the overt acts alleged by the Indictment relate to non-violent acts: the importation and sale of stolen goods, conspiring to defraud casinos, creating counterfeit credit cards, and stealing personal identifying information – and all of these acts are discussed with far more specificity than any allegations of violence. See, generally, id. at ¶ 11. Further, no evidence has been presented to counsel which suggests that Mr. Afanasyev participated in any violent acts, nor does Mr. Afanasyev have any history of violence.

Regarding the fourth factor – the possibility that the release of the names of the witnesses will increase the likelihood that they will not appear at trial – there can hardly be an argument that disclosure will have that effect. The government has not claimed that Mr. Afanasyev has ever obstructed justice or is a danger to the community.

Finally, the Indictment alleges that Mr. Afanasyev participated in different offenses which occurred over varying periods of time. Specifically, Count One merely indicates that Mr. Afanasyev took part in a phone call on *March 1, 2017* and discussed criminal activity. Id. at p. 16. Count Two alleges that Mr. Afanasyev was involved in a conspiracy to transport and sell stolen goods from in or about *2014 up to in or about May of 2017*. Id. at p. 19. And Court Four alleges that the defendant was involved in a conspiracy to commit identity fraud from in or about *January 2017 up to in or about May 2017*. The varying time periods for the offenses and lack of

specifics concerning when within those time periods any specific illegal acts were performed make it extremely difficult for the defendant to adequately prepare a defense for trial without being informed of the witnesses against him.

For all these reasons, the defendant requests an order compelling the government to provide the names and addresses of the witnesses that it intends to call at trial.

## POINT IV

### THE GOVERNMENT SHOULD BE REQUIRED TO PROVIDE RULE 404(b) EVIDENCE SIXTY DAYS BEFORE TRIAL

The defendant requests disclosure of Rule 404(b) evidence 60 days before trial. As shown above, the Indictment proffers almost no detail as to the defendant's role with respect to Counts One and Four and there is no realistic possibility of any threat to the safety of prospective witnesses in this case. See, infra, **POINTS I** and **II**.

Rule 404(b) of the Federal Rules of Evidence requires the government to provide "reasonable notice" in advance of trial of its intent to use other act evidence. The purpose of the notice provision is "to reduce surprise and promote early resolution" of any challenge to admissibility of the proffered evidence. Fed. R. Evid. 404(b) Advisory Committee's Notes. "While notice is typically provided no more than two to three weeks before trial, a longer period is appropriate [where there is an] absence of any threat to the safety of prospective witnesses and the ... Rule 404 (b) evidence [is important to] this action." Nachamie, 91 F. Supp.2d at 577 (internal citations and quotations omitted).

A survey of Southern District decisions reflect a wide range of time periods determined by courts to be reasonable for purposes of Rule 404(b) disclosure. In United States v. Reddy,

190 F. Supp.2d 558 (S.D.N.Y. 2002), Judge Swain determined that 45 days was reasonable. In Lino, the Court determined that 60 days was reasonable. See also United States v. De Yian, No. 94 Cr. 719, 1995 WL 368445 (S.D.N.Y. June 21, 1995) (Cote, J.) (disclosure ordered four months prior to trial); United States v. Aronson, No. 98 Cr. 564, 1999 WL 97923 (S.D.N.Y. Feb. 24, 1999) (one month prior to trial).

Accordingly, due to the vagueness of the conspiracy charge and the lack of any potential threat to prospective witnesses, the defendant respectfully requests that the government provide Rule 404(b) notice 60 days prior to trial to avoid any unfair surprise and to permit the defendant to properly investigate any new allegations.

## POINT V

**THE DEFENDANT IS ENTITLED TO PRETRIAL DISCLOSURE OF ANY AND ALL INFORMATION FALLING WITH THE PURVIEW OF *BRADY V. MARYLAND* AND ITS PROGENY**

Based on the nature of the involvement of Confidential Source 1 ("CS-1") and Confidential Source 2 ("CS-2"), who were working at the direction of the FBI in this case to help broker sales of stolen property and operate an illegal gambling house, it is probable that an independent investigation of these individuals will reveal numerous prior convictions. Because it may take a significant amount of time to track-down and verify the full details of each of their prior arrests after counsel has been notified as to their existence, such notice should be provided on an early and continuing basis to prevent any delay of trial.

Pursuant to Brady, the Government is obligated to provide favorable evidence to the defense where the evidence is material to guilt or punishment. Brady, 373 U.S. at 87; In re

United States v. Coppa, 267 F.3d 132, 139 (2nd Cir. 2001).  "Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness." Coppa, 267 F.3d at 139 (citing Giglio v. United States, 405 U.S. 150, 154 (1972)).  Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different.  "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985).  Only evidence that is material, as defined by the reasonable probability test set forth in Bagley, must be disclosed under Brady.  See Coppa, 267 F.3d at 141 ("the current Brady law ... imposes a disclosure obligation narrower in scope than the obligation to disclose all evidence favorable to the defendant") (citing Kyles v. Whitely, 514 U.S. 419 (1995)) (internal quotation marks omitted).

As a general rule, Brady does not require immediate disclosure of exculpatory evidence and impeachment material upon defendant's request. Coppa, 267 F.3d at 146.  "There is no Brady violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial." Id. at 144.  In Coppa, the Second Circuit set the timing of Brady disclosures as follows: "[T]he prosecutor must disclose 'material' (in the Agurs/Bagley sense) exculpatory and impeachment information no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made." Id. at 142.

Accordingly, "as long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." Id. at 144.  Moreover, it is the Government's responsibility to

15

determine what evidence is material and when such evidence should be disclosed in time for its effective use. See Id. at 143 ("The prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached.") (citing Kyles v. Whitely, 514 U.S. at 437).

## POINT VI

### THE DEFENDANT REQUESTS LEAVE TO SUBMIT ADDITIONAL PRETRIAL MOTIONS UPON RECEIPT OF OUTSTANDING DISCOVERY

To date, the great bulk – at least in terms of computer storage space – of the discovery remains outstanding. Indeed, as of the date of this filing, approximately 293 gigabytes worth of material has been turned over to the defendant, and yet the government has requested and been provided with a six terabyte hard drive to facilitate the transfer of additional discovery materials.[2] Should the government fill that hard drive, it would mean that less than 5% of the discovery in this case has been turned over. In response to an inquiry about the status of this hard drive, the government indicated on November 10, 2017 that the materials are still not ready to be provided to the defendant. See November 10, 2017 Email Correspondence from AUSA Andrew Adams, attached as Exhibit E.

While we are presently unaware as to what will be contained on this large hard drive, given its great bulk, it is inconceivable that the materials contained thereon will not require some additional briefing. Accordingly, Mr. Afanasyev respectfully requests leave to file additional pretrial motions as necessary once the additional discovery has been provided.

---

[2] One terabyte is equal to 1,000 gigabytes.

## POINT VII

### THE DEFENDANT RESPECTFULLY JOINS IN THE MOTIONS OF HIS CODEFENDANTS TO THE EXTENT THAT THEY ARE APPLICABLE TO HIM

### CONCLUSION

For the foregoing reasons, defendant Ivan Afanasyev's motions should be granted in their entirety.

Dated:	New York, New York
	November 17, 2017

	Respectfully submitted,

	_____/S/_____
	**JEFFREY LICHTMAN, ESQ. (JL6328)**
	**LAW OFFICES OF JEFFREY LICHTMAN**
	11 East 44th Street, Suite 501
	New York, NY 10017
	(212) 581-1001
	jhl@jeffreylichtman.com

	_____/S/_____
	**JEFFREY EINHORN, ESQ. (JE6559)**
	**LAW OFFICES OF JEFFREY LICHTMAN**
	11 East 44th Street, Suite 501
	New York, NY 10017
	(212) 581-1001
	einhorm@jeffreylichtman.com

	_____/S/_____
	**PAUL TOWNSEND, ESQ. (PT3784)**
	**LAW OFFICES OF JEFFREY LICHTMAN**
	11 East 44th Street, Suite 501
	New York, NY 10017
	(212) 581-1001
	Pt@jeffreylichtman.com