2030

I6iBshuF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

                    v.                    17 Cr. 350 (KBF)

RAZHDEN SHULAYA
a/k/a "Brother,"
a/k/a "Roma," and
AVTANDIL KHURTSIDZE,                      Trial
a/k/a "The Kickboxer,"

                    Defendants.
------------------------------x
                                          New York, N.Y.
                                          June 18, 2018
                                          9:30 a.m.
Before:
                    HON. KATHERINE B. FORREST,
                                          District Judge

                          APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
ANDREW C. ADAMS
ANDREW M. THOMAS
     Assistant United States Attorneys

ANTHONY CECUTTI
JENNIFER R. LOUIS-JEUNE
     Attorney for Defendant Shulaya

KREINDLER & KREINDLER
     Attorneys for Defendant Khurtsidze
BY:  MEGAN W. BENETT
     -and-
ZEMAN & WOMBLE
BY:  KEN WOMBLE

Also Present:
Yana Agoureev, Interpreter (Russian)
Andrew Tarutz, Interpreter (Russian)
Nana Meyer Interpreter (Georgian)
Lasha T. Gegechkori, Interpreter (Georgian)
Rose Corrado, Paralegal Specialist
Special Agent Robert Hanratty, FBI
Special Agent Naushaun Richards, FBI

I6iBshuF

(Trial resumed)

THE COURT: Hi. Good morning, everyone. Please be seated.

All right. I note that both defendants are present, as are counsel for each defendant, and the government is present.

I just wanted to be sure that we were all on the same page, and I think we are, from what my clerk has said, about the insert that will go on page 117 of the charge, which relates to Counts Two and Three. In the second paragraph on page 117, there's an insert for the overt acts for Count Two, and in the third paragraph, on page 117, there's an insert for the overt act with regard to Count Three.

These are individual overt acts. It is not the case that the jury needs to find all of these overt acts, but I want to make sure that the wording of what I have in front of me for this insert, which has been handed around, is acceptable. We're going to put this on the docket.

Anybody have any comments or changes?

MS. BENETT: No comments from Mr. Khurtsidze.

THE COURT: Ms. Louis-Jeune.

MS. LOUIS-JEUNE: No, your Honor.

THE COURT: Terrific.

Our plan, then, is to continue with the remainder of the charge, which shouldn't take long, and give the case to the

I6iWshu1                        Charge

jury.

Are there any issues with regard to exhibits that we need to go over or the index for the exhibits?

MR. ADAMS:  I don't think so, your Honor.  We went through last Friday and it looked like everything was in order. We have the paper exhibits ready to just wheel back, and I'm not sure what the Court wants to do with respect to the physical exhibits.

THE COURT:  The physical exhibits, my typical way of proceeding is to tell them they can ask for them but not to send them back.  There are a lot of them.

MR. ADAMS:  Yes.

THE COURT:  If that's OK, that's what we'll do.

MR. ADAMS:  Makes sense to me.

MS. BENETT:  Just to be clear, there were a few hiccups that we found that, very few, that Ms. Corrado said she was going to correct.  I just want to make sure with the government those have been corrected.

MR. ADAMS:  I believe they have.  Ms. Corrado is coming in shortly this morning, and we will confirm with her.

THE COURT:  All right.  What I would suggest, Ms. Benett, the exhibits don't have to go back the minute that the jury goes back.  I like to have them sent in as contemporaneously as possible.  Let's make sure that you have an opportunity to speak with Ms. Corrado when she gets in to be

I6iWshu1                        Charge

sure that whatever changes you had suggested to be made are, in fact, made.

MS. BENETT:  I've got my list here.

MR. ADAMS:  And I have the list in the back.  I'll hand it out to defense counsel now.

THE COURT:  OK.  We're ready.  Let's go ahead and bring out the jury then.  I was going to talk about logistics for after the jury's charged, but we'll wait.

(Jury present)

THE COURT:  Ladies and gentlemen, as you're coming in and reach your seats, you'll see that my clerk has placed a two-page insert onto each chair for each of you.  Let's all be seated now.  I think everyone's arrived.

As you know, folks, we are at the tail end of the jury charge.  We had stopped on Friday at page 117, and I told you there was going to be something that we were going to discuss.  There are two inserts that do need to be made to page 117, and that is what has been left on your chairs.  We'll go through that right now.  Conveniently, that's exactly where we are, and I'm going to describe to you where they go.

You'll see on the two-page insert, there is a statement that says Count Two, A through D --

We're not going to take anything up right now.

-- and that will go under the second full paragraph on that page, where it says, "As to Count Two," "the following

I6iWshu1                    Charge

overt acts were committed in the Southern District of New York."  When you turn to the insert, you'll see there's Count Two, A through D, and that's the insert that goes right there.

Then the next paragraph on page 117 says, "As to Count Three, the indictment charges the following overt acts were committed in the Southern District of New York," and you'll see on your insert, there's a Count Three referenced and there are overt acts A, B, and C.  And that's the insert.

You can ignore the paper inserts if you want.  I'm going to go through it with you right now, and we're going to finish up the charge.  OK?

We're on page 117 and I'm going to now complete the charge with you.

We're talking about Counts Two and Three.

The third element the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that at least one of the overt acts charged in the indictment was knowingly committed by at least one of the conspirators at or about the time and place alleged.

I want to remind you, since we have had the weekend in between, that Mr. Khurtsidze is not charged in Counts Two and Three.  These are counts that are only charged as to Mr. Shulaya.  All right?

As to Count Two, the indictment charges the following overt acts were committed in the Southern District of New York,

I6iWshu1                    Charge

and now I'm looking at the insert.

A.   On or about December 11, 2014, Razhden Shulaya, a/k/a "Brother," a/k/a "Roma," the defendant, in Manhattan, New York, negotiated the sale of stolen jewelry to CS-1.

B.   On or about March 23, 2015, in Atlantic City, New Jersey, Shulaya negotiated for the purchase, and in fact received, cigarettes that Shulaya understood to have been stolen from a facility in Virginia.

C.   On or about August 9, 2016, Shulaya received, in the vicinity of Cropsey Avenue, Brooklyn, New York, 11 cases of purportedly stolen cigarettes from CS-1.

D.   On or about April 7, 2015, Shulaya received, in the vicinity of Bay Parkway, Brooklyn, New York, 10 cases of purportedly stolen cigarettes from CS-1.

One thing I want to point out is that all of these overt acts need not be proven, only one.

Let's go on.

As to Count Three, the indictment charges that the following overt acts were committed in the Southern District of New York.

I'm looking now at the insert:

A.   On or about March 23, 2015, in Atlantic City, New Jersey, Razhden Shulaya, a/k/a "Brother," a/k/a "Roma," the defendant, negotiated for the purchase, and in fact received, cigarettes that Shulaya understood to have been stolen from a

facility in Virginia.

B.  On or about August 9, 2015, Shulaya, in the vicinity of Cropsey Avenue, Brooklyn, New York, received 11 cases of purportedly stolen cigarettes from CS-1.

C.  On or about April 7, 2016, in the vicinity of Bay Parkway, Brooklyn, New York, Shulaya received 10 cases of purportedly stolen cigarettes from CS-1.

Again, any one of those overt acts would suffice.

Now, we're going to continue on page 117.

In order for the government to satisfy this element, which is the overt-acts element, it is not required that all of the overt acts alleged in Count Two or in Count Three be proven.

Similarly, you need not find that the defendants in this case committed an overt act.  It is sufficient for the government to show that one of the coconspirators, who may not be a defendant, knowingly committed an overt act in furtherance of the conspiracy, since such an act becomes, in the eyes of the law, the act of all of the members of the conspiracy.

You are further instructed that the overt act need not have been committed at precisely the time alleged in the indictment.  It is sufficient if you are convinced beyond a reasonable doubt that it occurred at or about the time and place stated.

Finally, you must find that either the agreement was

formed or that an overt act was committed in the Southern District of New York, which includes Manhattan, the Bronx, Westchester, Rockland, Putnam, Orange, Dutchess and Sullivan counties.  This is what's called "venue."  I should note on this issue -- and this issue alone -- the government need not prove venue beyond a reasonable doubt but only by a mere preponderance of the evidence.  That means that the evidence shows it is more likely than not that something occurred. Thus, the government has satisfied its venue obligations if you conclude that it is more likely than not that the crime charged or any act in furtherance of the crime charged occurred in the Southern District of New York.  If, on the other hand, you find that the government has failed to prove this venue requirement by a preponderance of the evidence, then you must acquit the defendant of the conspiracy charge.

The fourth, and final, element the government must prove beyond a reasonable doubt is that the overt act was committed for the purpose of carrying out the unlawful agreement.  In order for the government to satisfy this element, it must prove beyond a reasonable doubt that at least one overt act was knowingly and willfully done, by at least one conspirator -- and again, a conspirator need not be a defendant -- in furtherance of some object or purpose of the conspiracy, as charged in the indictment.  In this regard, you should bear in mind that the overt act, standing alone, may be

an innocent, lawful act. Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding and abetting, or assisting the conspiratorial scheme. You are therefore instructed that the overt act does not have to be an act which, in and of itself, is criminal or constitutes an objective of the conspiracy.

The conspiracies charged in Counts Two and Three have different objectives.

The objectives of the conspiracies charged in Count Two were (a) to transport stolen goods in interstate commerce, in violation of Title 18, U.S.C., Section 2314; and (b) to receive and possess stolen goods transported across state boundaries, in violation of 18 U.S.C. 2315.

The elements of these substantive crimes are as I instructed with respect to the racketeering predicates.

The object of the conspiracy charged in Count Three is to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes.

The elements of this substantive crime as are I instructed you with respect to the racketeering predicates.

Count Four of the indictment charges Razhden Shulaya with conspiring to commit fraud in connection with identification documents.

As I told you with respect to Count One, the crime charged is the conspiracy itself, and you may find the

I6iWshu1                      Charge

defendant guilty of the crime of conspiracy to commit identification document fraud even if you conclude that the substantive crime of identification document fraud was not actually committed.

To sustain its burden of proof with respect to the conspiracy charged in Count Four of the indictment, the government must prove beyond a reasonable doubt the following two elements:

First, that the conspiracy charged in Count Four existed; that is, that there was an agreement between two or more persons from at least in or about January 2017 to at least in or about May 2017 to commit fraud in connection with identification documents.  Therefore, the first question for you is, Did the conspiracy alleged in Count Four exist?  Was there such a conspiracy?

Second, the government must prove beyond a reasonable doubt that the defendant knowingly and willfully became a member of that conspiracy; that is, that he knowingly participated in the conspiracy with knowledge of its object or objects, and with an intent to further the aims of the conspiracy.

These two elements are the same as those I described to you with respect to Count One, and my instructions about the meaning of those elements apply equally here.  The sole difference is that the objective of the conspiracy charged in

Count Four was the commission of various identification document fraud offenses rather than racketeering conspiracy. Unlike Counts Two and Three, however, it is not necessary for the government to prove any overt acts.

To find the defendant guilty of the conspiracy charged in Count Four of the indictment, you must therefore find beyond a reasonable doubt that the conspirators agreed to accomplish the objective charged in Count Four of the indictment -- that is, transferring, possessing, or using a means of identification with the intent to commit a federal crime or a state felony crime.

The elements of that crime are as I instructed you before:

First, that an item referred to in the indictment is a means of identification of another person, as I will define that term for you;

Second, that the defendant used, transferred, or possessed that means of identification;

Third, that the defendant acted knowingly and without lawful authority;

Fourth, that the defendant acted with the intent to commit, or to in aid and abet, or in connection with an unlawful activity that violates federal or state law; and

Fifth, that the defendant's conduct was in or affecting interstate commerce.

I6iWshu1                        Charge

Please refer to my instructions on these elements as I gave them to you in discussing the identity fraud predicate of Count One.

If you find that the government has proven the elements that I just described for you, there is one more thing I would like you to decide, and that is whether the government has proven beyond a reasonable doubt that as a result of the defendant's use (or transfer or possession) of a means of identification of another person, the defendant obtained (or attempted to obtain) anything with a value of $1,000 or more during any one-year period.

To establish this, the government must prove that the defendant obtained during a one-year period money or property with a value of at least $1,000.  The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.  "Market price" means the price a willing buyer would pay a willing seller at the time the property was obtained.

Count Five of the indictment charges both defendants with conspiring with at least one other person to commit wire fraud.

In order to find the defendant guilty of this count, you must find that the government has proven the following two elements beyond a reasonable doubt:

First, that the conspiracy charged in Count Five

I6iWshu1                    Charge

existed -- that is, an agreement or understanding between two or more persons existed at some point between September 2016 and May 2017 to intentionally and knowingly violate the laws of the United States that make it a crime to commit wire fraud;

Second, the government must prove that the defendant intentionally and knowingly became a member of this conspiracy -- that is, that at some point during the conspiracy, he knowingly joined and participated in the conspiracy to commit wire fraud with knowledge of its object and an intent to further that object.

In connection with Count One, I have previously instructed you regarding the existence of a conspiracy and what it means for a defendant to knowingly and willfully join a conspiracy at any time during its progress. The same instructions apply to this count.

You must return a separate verdict of guilty or not guilty for each count charged. Whether you find a defendant guilty or not guilty as to one offense should not affect your verdict as to any other offense charged against the defendant. You must analyze and evaluate the evidence separately as to each count.

Now, I should say that does not mean that the evidence that can apply to one count doesn't apply to another count. You can have evidence apply to multiple counts, but you should evaluate each count independently.

I6iWshu1                        Charge

Conscious avoidance.

This charge relates solely to Mr. Khurtsidze.  This charge does not relate to Mr. Shulaya.

As I explained, the government is required to prove that a defendant acted knowingly, as I have defined that term already.  In addition to a person actually being aware of a fact, the law also allows you to find that a defendant had knowledge of a fact required for conviction when the evidence shows that he was aware of a high probability of that fact but intentionally avoided confirming that fact.  The law calls this "conscious avoidance" or "willful blindness."

In determining whether the government has proven beyond a reasonable doubt that Mr. Khurtsidze acted knowingly with respect to the charges in the indictment against him, you may consider whether Mr. Khurtsidze deliberately closed his eyes to a fact required for conviction that would otherwise have been obvious to him.  One may not willfully and intentionally remain ignorant of a fact important to his conduct in order to escape the consequences of criminal law.

Thus, if you find that Mr. Khurtsidze deliberately acted with a conscious purpose to avoid learning some relevant fact, then you may treat him as though he knew that fact existed.  However, guilty knowledge may not be established by demonstrating that a defendant was merely reckless, negligent, careless, or foolish.

You may not rely on willful blindness as the basis for treating Mr. Khurtsidze as though he was aware of the existence of a fact if you find that he actually believed that the fact did not exist.  It is entirely up to you whether you find that a defendant deliberately closed his eyes and any inferences to be drawn from the evidence on this issue.

Let me explain what the concept of willful blindness or conscious avoidance means with respect to conspiracy charges.  There is a difference between knowingly participating in the conspiracy and knowing the object or objects of the conspiracy.  "Conscious avoidance," as I have described it, cannot be used as a basis for finding that a defendant knowingly joined the conspiracy.  It is logically impossible for the defendant to join a conspiracy unless he knows the fact that the conspiracy exists.  However, if you find beyond a reasonable doubt that the defendant, Khurtsidze, chose to participate in a joint undertaking, you may consider whether the defendant deliberately avoided confirming otherwise obvious facts about the purpose of the agreement, which was to break the law as alleged.

That is, if you find beyond a reasonable doubt that a defendant -- here, Khurtsidze -- knew that there was a high probability that his coconspirators intended to break the law but that he deliberately avoided confirming this fact, you may treat this deliberate avoidance of positive knowledge as the

equivalent of knowledge of the object of the charged conspiracy, unless you find that the defendant actually believed that he and his coconspirators were acting in a lawful manner.

I have now told you the elements of each charge in the indictment. In addition to all of the elements I have described on each of the counts, you must also decide whether some act in furtherance of the charge that you are considering occurred within the Southern District of New York. As I have said already, the Southern District of New York includes only the following counties: Manhattan, the Bronx, Westchester, Dutchess, Putnam, Rockland, Orange, and Sullivan. This is called "venue." Venue just simply means place or location.

In this regard,t the government need not prove that any crime was committed in this district or that the defendant was present here. It is sufficient to satisfy this element if any act in furtherance of the crime you are considering occurred within this district.

Further, if you find that the crime charged is committed in more than one district, venue is proper in any district in which the crime was begun, continued, or completed. Thus, venue will lie in this district, the Southern District of New York, if you find that an overt act in furtherance of the conspiracy took place here, whether or not the defendant himself was even in this district. I further instruct you that

any action in the Southern District of New York, or any communication into or out of the Southern District of New York, can establish venue so long as the action furthers the conspiracies charged.

On this issue of venue -- and this issue alone -- the government need not prove venue beyond a reasonable doubt but only by a mere preponderance of the evidence. A "preponderance of the evidence" means more likely than not. Thus, the government has satisfied its burden of proof as to venue if you conclude that it is more likely than not that any act in furtherance of the crimes charged in each count occurred in the Southern District of New York. If, on the other hand, you find that the government has failed to prove the venue requirement as to a particular offense, then you must acquit the defendant of the offense you are considering, even if all of the other elements of an offense are proven.

Now, under your oath as jurors, you are not to be swayed by sympathy. You are to be guided solely by the evidence in this case, and the crucial question that you must ask yourselves as you sift through the evidence is, Has the government proven the guilt of each defendant beyond a reasonable doubt with respect to the elements of each offense charged?

It is for you, and you alone, to decide whether the government has proven beyond a reasonable doubt that each

I6iWshu1                        Charge

defendant is guilty of the crimes for which he is charged solely on the basis of the evidence or lack of evidence and subject to the law as I have now charged you.  It must be clear to you that once you let fear, prejudice, bias, or sympathy interfere with your thinking, there is a risk that you will not arrive at a true and just verdict.

If the government has failed to establish a defendant's guilt beyond a reasonable doubt, you must acquit him.  But on the other hand, if you should find that the government has met its burden of proving a defendant's guilt beyond a reasonable doubt, you should not hesitate because of sympathy or any other reason to render a verdict of guilty.

The question of possible punishment of each defendant is of no concern to you, ladies and gentlemen of the jury, and should not in any sense enter into or influence your deliberations.  The duty of imposing sentence rests exclusively upon the Court.

Your function is to weigh the evidence in the case and to determine whether or not the government has proven that each defendant is guilty beyond a reasonable doubt solely upon the basis of such evidence.

Now, your function is to weigh the evidence in this case and to determine the guilt or the nonguilt of each of the defendants.

Ladies and gentlemen, you are finally about to begin

I6iWshu1                        Charge

your deliberations.  The exhibits that have been received into evidence that can be sent into the jury room will be sent into the jury room; that is, all of the documents will be sent into the jury room in a cart.  We call it the jury cart or the evidence cart, and that's about to happen.  But the physical evidence -- the cigarettes, some of the other physical evidence that you saw, the iPads -- there's a whole bunch of it that you can see, some of which is still laid out here on the table and in boxes, we're not going to send that back into the jury room.  But if you want to see any of it, we are happy to have you come out here and inspect it.  What we'll do is I'll describe to you in a moment the process for that, and some of it can even be sent into the jury room for you.  It depends on what it is. All right?

         Now, let's talk about questions.  There is paper in the jury room that is a form that has on it the name of the case and it has the time and the date and all of that and sort of lines for questions.  Any communications that you have for the Court come in writing.  All right?  And so what you do is, anybody can fill out the question, but the jury foreperson signs the question.  The only reason for that is to prevent rogue jurors.  It's so that everybody knows what's happening around the table at the same time.  It's not that only the foreperson can have a question; anybody can have a question.

         What you do is you have a question, let's just say you

I6iWshu1                    Charge

wanted to have X person's cross-examination testimony on the following point read back to you, be as specific as you can. Or maybe you want all the testimony on a particular point, direct and cross and any redirect, all the testimony on a particular point read back to you.  Be very specific.  Just say, We'd like to have the testimony of whoever it is, or, All the testimony on the following point.  It could even just be a point, and we can get it from anybody who spoke about that point read back to you.  Be very specific.

Here's the process.  You'll write it down.  You'll put it in the envelope.  You will not slime up the envelope too much, because I have to open the envelope.  You'd be amazed as how much slime can accompany these, but do seal the envelope in some manner or fashion.  You will take the envelope, you will hand it to the marshal, who in a few moments will be sworn, to be the person who will interface with you from now on, not Joe. OK?

(Continued on next page)

THE COURT:  That marshal will take this envelope.  It will be an orange envelope.  That marshal will find Joe.  Joe will be around here.  Joe will find me.  I will either be in my office here or my office downstairs.  I have two.

I will then open said envelope.  I will read the question on the envelope.  I will then gather up all of these parties and bring them into the room.  We will then read the question to each other.  I will to read it to them.  We will all discuss how to answer your question.  If you're not specific, it leaves a lot of room for interpretation.  That's why you really want to be specific, because you can imagine how we're going to be interpreting and trying to be very specific.

We will then gather up whatever it is you want and we will then send it back into the jury room, but sometimes it takes a little while, because if it's testimony in different places, we have to gather it up, we have to make sure everybody agrees it's the right testimony, not too much, not too little.  Then we send it back to you.  I tell you that not to discourage you from asking questions, but to tell you that when you ask questions there's a whole process involved.  Don't expect that we can just send you a transcript with a flagged page, because as you know, every time you leave the room, I go over things with the parties that are not for the jury to hear.  So we can't just send the transcript back.  We have to do a process to redact certain things that you shouldn't see.  We'll only

send back what you've asked for.  So just be aware of that process.  Every question requires this process.

Now, be as specific as you can.  Any communication has to be in writing.  Never ever, ever say on the communication, By the way, we are seven to five on the following issue, We are eleven to one on the following issue, we are ten to two, we are six to six.  Don't tell us the split of the vote.  That's private.  That is for you and you alone.  The only time that you will tell us the vote is one that is unanimous and you are ready to deliver a verdict.

At that point, you'll fill out on the question sheet on that little question sheet, We have reached a verdict, period, signed by the foreperson.  You'll put that into the envelope, you'll send the envelope out.  I'll open it.  I'll say, We've reached a verdict.  We'll gather everybody together.  We'll get you folks to come out here.  The foreperson, which I'll describe in a moment, then I'll say to the foreperson, Madam or Sir Foreperson, we understand you've reached a verdict, would you please hand the verdict sheet to Joe.  The verdict sheet then gets handed to Joe.  Joe will hand it to.  Me I will inspect it and make sure, in fact, everybody has signed it.  Everybody should sign it.  Even though it's got only the foreperson, we should have everybody sign it.

We will then have Joe read it.  The reason for that is some people are very comfortable being the foreperson but are not

I6IBSHU2                    Charge

comfortable standing up and reading a big long verdict in open court. So we've eliminated that. I know it's done in the movies, but we've eliminated it. Joe will read the verdict. So that's the process that we use.

Now, your first task, I'm now at the bottom of 134, is to choose a jury foreperson. There is no right or wrong way for you to do that. Sometimes in the movies it's Juror No. 1, sometimes in the movies it's Juror No. 12. In fact, there's no reason it has to be 1 or 12, but because it's done in the movies a lot, sometimes people just make it No. 1 or 12. That's for you guys to decide. Sometimes somebody says, Hey, I'm perfectly comfortable doing it, raises their hand. However you want to do it. Sometimes people say, Let's all just put our juror numbers into a pile and pick one out. There's no right or wrong way. And we need never know how you picked your jury foreperson. That person will sign the sheets of paper. We don't have to ever talk about your democratic process. However you do, we do it.

The jury foreperson doesn't have a greater voice than anybody else. Everybody should consult on every question. Everybody, every juror has an equal voice around the table.

Now, I'm on page 135. The most important part of the case, ladies and gentlemen of the jury, is about to happen. It's go to be the time for you to deliberate on the issues of fact and for you and you alone to decide whether or not the government

I6IBSHU2                         Charge

has proven beyond a reasonable doubt the essential elements of crime with which each of the two defendants here has been charged.  Your verdict as to each count must be unanimous.  If the government has failed with regard to any crime alleged, your verdict must be not guilty.  If it has succeeded, your verdict must be guilty.

I know you will try the issues that have been presented to you according to the oath that you have taken as jurors.  In that oath you promised that you will well and truly try the issues joined in the case in a true verdict rendered. Your function is to weigh the evidence in the case and determine whether or not each defendant is guilty or not guilty based solely upon the evidence.

As you deliberate, please do listen to the opinions of your fellow jurors and ask for an opportunity to express your own views.  Every juror should be heard.  No one juror should hold center stage in the jury room.  No one juror should control or monopolize the deliberations.  If, after listening to your fellow jurors, and if, after stating your own view, you become convinced that your view is wrong, do not hesitate because of stubbornness or pride to change your view.  On the other hand, do not surrender your honest convictions and beliefs solely because of the opinions of your fellow jurors or because you were outnumbered.  Your final vote must reflect your conscientious beliefs as to how the issues should be decided.

Again, your verdict as to each count and each defendant must be unanimous. If, at any time, you're not in agreement, you are instructed that you are not to reveal the vote of the jury. That is the position of the jurors. That's split to anyone, including to the Court.

Finally, I say this not because I think it's necessary, but because it is the custom of this courthouse to say this, you should treat each other with courtesy and respect during the deliberations.

All litigants stand equal in this room, all litigants stand equal before the bar of justice, and all litigants stand equal before you. Your duty is to decide the issues before you fairly and impartially and to see that justice is done. Under your oath as jurors, you are not to be swayed by sympathy. You should be guided solely by the evidence presented during the trial and the laws I've given to you without regard to the consequences of your decision. You have been chosen to try the issues of fact and reach a verdict on the basis of evidence or lack of evidence. If you let sympathy interfere with your clear thinking, there is a risk that you will not arrive at a just verdict. All parties are entitled to a fair trial. You must make a fair and impartial decision so that you arrive at a just verdict.

Now, as I've said, I've also given you a copy of the verdict sheet. I think it is self-explanatory. As you go

I6IBSHU2                    Charge

through each time you check off a box.  You need to make sure you'll check off only one verdict form that will come ultimately out here with you at the end of your deliberations and every time you've checked off a box, you need to be unanimous and the other ways that I've described as well.

            MS. BENETT:  Before the jury goes back, there's just one thing.

            THE COURT:  I may have misstated something.  OK, folks.  I'm going to have a brief sidebar.  I'm going to have a brief sidebar.

            DEFENDANT SHULAYA:  (In Russian)

            THE COURT:  No, sit down.

(At sidebar)

MS. BENETT:  Just when you were going through page 117, it was not in the context of one of the conspiracies with which Khurtsidze is charged, but because all the other conspiracies pick up on the language, you added a reminder to the jury that one of the coconspirators and then you stressed, "who may not be a defendant, knowingly committed an overt act in furtherance of conspiracy."

I feel like that diluted the instruction which is important for Mr. Khurtsidze that a government agent cannot be a coconspirator and that's particularly important in this case because one the critical acts of purported extortion involved Mr. Kutsenko taking Mr. Khurtsidze on September 1 as his companion to meet with Mr. Demidenko and there's nothing in the evidence beyond Mr. Kutsenko's testimony that Khurtsidze took any money from Mr. Demidenko.

THE COURT:  And the other point?

MS. BENETT:  I felt like the beyond a reasonable doubt on the conscious avoidance was minimized in the tenor of the instruction, but I don't know if the Court is inclined to correct that or not.

THE COURT:  So I don't feel that either correction is needed.  The jury is instructed to take the instructions as a whole and to law presumes that they follow them.  The government agent instruction has been given earlier.  They have

been instructed that a government agent cannot be a coconspirator. Therefore, I don't think on page 117, referring to a coconspirator who need not be a defendant, somehow undoes or implicates the government agents. They've already been instructed that a coconspirator cannot be a government agent. As to proof beyond a reasonable doubt, I think that that is there sufficiently.

So your exceptions are noted, but they're overruled.

MS. BENETT: Just to clarify, the objection here was to the Court's ad lib addition of, "A coconspirator need not be a defendant," it was not in the written instructions, or else I would have flagged it previously.

THE COURT: The reason for that is because it only relates to one defendant. I wanted to be sure that the jury understood that an overt act need not have been committed actually by Mr. Shulaya. That's for Counts Two and Three that the overt act could have been committed by a different coconspirator, so long as they found that the individual, in fact was a coconspirator. That was the nature of it. These things do happen from time to time when I realize that there are clarifications which are important.

Anything further?

MS. LOUIS-JEUNE: Your Honor, against my advice, my client wishes to speak with the Court. I have tried to have him not speak in front of the jury. I would ask that he be

I6IBSHU2                        Charge

allowed to speak.

THE COURT:  He can't speak in front of the jury.

MS. LOUIS-JEUNE:  After the jury?

THE COURT:  Let me just take that up after the jury has been sent back into the backroom.  Then we can talk about that at that time, Ms. Louis-Jeune.

MS. LOUIS-JEUNE:  Thank you.

(In open court)

THE COURT:  All right, ladies and gentlemen.  We're ready to go.  Let me just tell you a few things now about deliberations.

You should deliberate when you're all together.  If somebody happens to be a smoker -- I don't know if there are any smokers on the jury, if you need a cigarette break, you need to wait for that person to come back to the room so things don't happen without people being there.  If somebody needs to go out and take a walk, again, wait for that person to come back.  So everybody then would take a break from deliberations, because you all want to be around when decision-making is happening.

At 5:00, five minutes to five, if you have not reached a verdict before that, I will call you out here three minutes to five and I will, together as a group, let you go for the evening.  I'll instruct you not to talk to anybody, apart from each other when you're all gathered together about this case.

At the conclusion of the case, by the way, I will lift the oath that you have taken of silence.  But I will discharge you for the evening then. So that's the next time you will actually see me, unless you ask questions in which case we'll bring folks back.

Joe is going to swear in the marshals in just a moment.

Let me talk to the two alternates.  I mentioned on Friday that you folks are not discharged from your jury service altogether.  As I said to you, it can, and often has been the case that we've had to call upon the alternates in the order which you are seated.  First, Alternate 1; second, Alternate 2 to come in and deliberate.  If that happens, we would then have a group session and talk about how that all occurs.  We would call you on your cell phone.  The moment there's a verdict, Joe will call you so that you know you're done.  If you get a cell phone call from Joe saying the jury has reached a verdict, you are at that point in time discharged from the jury altogether.  You're also released from your oath of silence.  Until that time, please do not talk to anybody about this case, because you may become an active juror at any moment.  Joe will have your contact information.

Joe, I'd ask you, please, just to have the marshal sworn in.

(Marshal sworn)

THE COURT:  All right, ladies and gentlemen.  We're going to have the two alternates go and get your belongings out of the room and take off for the day.  Try to stay cool.  It's very hot outside.  If I don't see you again, I want to thank you very much, but we may, again, be calling upon you, so stay tuned.

Ladies and gentlemen of the jury, now is the time that

I6IBSHU2                        Charge

you are about to go into the jury room and talk to each other. I'm going to ask you specifically, please, talk to each other, you'll select a foreperson, however you deem appropriate.  Joe will arrange for lunch and you'll send out any notes that you have, including that you have reached a verdict when you have.

          Thank you.  Good luck to you.  You may now go in.

          (Continued on next page)

(Jury not present)

THE COURT:  All right, ladies and gentlemen.  Let's all be seated.

Let's talk about logistics for a moment and let me tell you how we tend to work when we have a deliberating jury. The way that we work is that Joe will be the main person who should know where anybody is who wants to be here when a question is read, when information is decided upon to answer a question and when the verdict comes in.  So all I need is each defendant and one counsel for each defendant and one person from the government, counsel for the government.  Other than that, I'm going to go ahead and get started.  So we will not wait for you if you are out of the building.  We will not wait for you if you are a conference call.  Just so you understand.

So stay close.  Let Joe know where you are.  You can go down to the eighth floor and be outside.  It's not like you have to be tethered to this room.  Make sure Joe knows how to get a hold of you with a cell phone or something else so we can get a hold of you and get you in here, particularly if there are questions.

As you folks know, in this kind of trial I would expect a number of questions.  We'll get the evidence to the jury, but sometimes it's as much as the white board markers don't work and we need more Post-its to we don't understand the instruction for X,Y, Z.  I find those questions come in the

I6IBSHU2                      Charge

first couple of hours, sometimes more often than any other time.  So I wouldn't go too far for the first few hours.

Don't leave the building for lunch if you want to be here for a question or for the verdict because we will proceed even at 1:00.  I do have sentencing at 1:00.  It's the only time in the middle of the sentencing that I will prioritize the sentencing over the question of the jury.  Everything else, this trial takes precedence.  It's just that a sentencing is the only thing that takes precedence over a short time.  It won't be a long sentencing.  It's not a complicated sentencing. So there will be a short period of time when I'll be in the courtroom able to receive a note, but I won't actually stop the proceeding.  Everything else I will stop and take a note and it will be a priority.

Is there anything from you folks that you would like to raise at this time?

MR. ADAMS:  Your Honor, I have the list of the exhibits.  Does it look OK?

MS. BENETT:  The list looks fine.  I just wanted to check the cart.

THE COURT:  When that's done, tell Joe.  Joe will give it to the marshals.  If you're in agreement, I don't need to be involved in that.

MR. ADAMS:  Thank you, your Honor.  There's also a essentially blank laptop for the disks and I'll show that to

I6IBSHU2                          Charge

defense counsel as well.

THE COURT:  Anything further?

All right.  Thank you, folks.  We are adjourned.

(Recess)

(Continued on next page)

I6IBSHU3

THE COURT:  All right, ladies and gentlemen.  Let's all be seated.

We have a note from the jury.  Let me read it to you and then after we're done talking about it, we'll make it available for inspection by people.  It says, "Your Honor, the jury is deliberating and one of the jurors is using non-law principles to come to a conclusion in this case.  Is this something we have to sort through or is this a case an alternate needs to be called?" The foreperson then has signed this.  So I don't know, and this could go in either direction. It could go either for the defendant, either defendant, or against either defendant; for the government or against the government.

What is clear, I think, and what I would propose we do is simply restate to the jury a couple of propositions.  No. 1, which is that at the time of voir dire, and also in the jury instructions most recently, they were given instructions that under our system of the law the facts are for the jury to determine and the law is for the Court.  These two areas are separate and distinct and that you are required to accept the law as I explain it to you and it will be your job to determine the facts under my explanation of the law and that's an instruction.  And the jurors were also asked to confirm that they were neither unwilling or unable to do so.  In addition, they were each asked, did they have any religious,

philosophical, or other beliefs that would make them unable to render a guilty verdict in this criminal case.

So what I would propose to do is not, at this point in time, do a lot more than to say what the jury has to do, No. 1, let me remind you these principles and that they are to be applying the law to the facts as they determine the facts to be. So it is the law with the facts and it is the law as I instruct them. Put another way, if they have a philosophical view, a religious view, or something else that they believe is inconsistent with the law, they must put that to the side and apply the law as I have given it to them. How they weigh the evidence, however, is entirely up to them.

Let me hear comments from counsel as to whether they are in agreement or are in disagreement with how I propose to proceed?

MR. ADAMS:  No, that's fine with the government, your Honor.

THE COURT:  Let me hear from defense counsel.

MR. CECUTTI:  Your Honor, can we have just a moment, please.

THE COURT:  Yes.

(Defense counsel conferred)

MS. BENETT:  Your Honor, we would ask that the Court remind the jury that there was the inferences instruction that was delivered at the beginning as well that says that there are

times when different inferences may be drawn from facts whether proven by direct or circumstantial evidence, the government asks you to draw one set of inferences, but the defense asks you to draw another.  We would like the jury to be reminded that it is for them and them alone to decide what inferences to draw.  We would object to the instruction as proposed and would ask that the inferences instruction be provided.  The Court is going to instruct the jury --

THE COURT:  Well, I don't think it's a matter of inferences.  What they're saying is they're trying to apply non-law principles.  What I can say is if it's a matter of competing factual inferences, then different facts are, of course, open to different competing factual inferences and it's up to the jury to determine what inferences may be drawn.

MS. BENETT:  My concern with the instruction that the Court fashioned was that the note says "non-law principles."  I don't know what that means.  I don't know if that's religious or philosophical.  It may be that some jurors believe that they are not allowed to use their own common sense or experience or perspective from which to draw the inferences that are solely within their province.  They have been previously instructed on inferences, they've been previously instructed on the use of their own independent judgment to weigh the evidence and to draw inferences and to consider whether the government has satisfied its burden of proof beyond a reasonable doubt.

If the Court is going to instruct the jury with respect to following the law as the Court articulated it in determining the facts within that framework, we ask that they also be reminded that it is solely for them to draw inferences from the facts presented to them over the last two weeks and it will be for them to use their reason, judgment, and experience. And perhaps, the role of the jury instructions I believe was on page 5.

THE COURT:  I can refer them to that instruction.

MS. BENETT:  I was going to say, I would say the role of the jury instruction is sufficient to address the concerns raised in the note.

THE COURT:  So what I'll do is, just to review, I'll read the note that we received, I will say several things. "You're required to put to your side personal views of philosophical, religious, or other nature inconsistent with the law as I have instructed you."  I'll remind them of the role of the jury that they're the exclusive judges of the facts, but also that it's my role now to instruct them on the law, but I will also refer them to the inference instruction.  Let me just get to that instruction.

MS. BENETT:  I believe that's on --

THE COURT:  It's page 14.

MS. BENETT:  Yes.

THE COURT:  And then I'll also remind them of the two

instructions that we started with.

MS. BENETT:  Just to be clear, when you say you will refer them to inference --

THE COURT:  Let me tell you exactly what I'll say.

MS. BENETT:  I was just wondering, I guess our concern would be that you articulate specifically the role of the Court in instructing them as to the law and that you are directing them -- and I don't think there is anything in that note that speaks to philosophical religious or other beliefs.  It just says -- so using non-law principles may be using common sense, which is entirely proper.

THE COURT:  That is proper.  And I'm going to refer them to the inference instruction and I'm sure they'll reread it.  It sounds like they're taking this very seriously.  What we don't want them to be do is to be confused in any way that they should be drawing on nonlegal principles and nonfactually based weighing of evidence and applying some sort of philosophical view to what they think or a religious view to what they think.  That would be an inappropriate way of proceeding.

So I think that a combination of the role of the Court instruction, the instructions during voir dire, and the inference should cover the ground.

MS. BENETT:  I would also ask then if we're doing the role of the Court instruction on page 4, that we also do the

role of the jury instruction on page 5, which speaks also to credibility of witnesses and resolving --

THE COURT:  We're not going to give them every instruction again.  I hear you, Ms. Benett.  What we'll do is I will give them that they are exclusive judges of the facts.  Here's what I'll say.  Let me read it to you in terms of the inference piece.

"If it's a matter of competing factual inferences, it is up to the jury to determine whatever factual inferences you deem appropriate.  I have previously instructed you on inferences and I refer you to that instruction on page 14."  And I'll encourage them to go and reread it and they've all got a copy of that.  So I will mention that and we'll see where this goes.

My guess is after we've given them to them, they'll go back to the backroom.  It sounds like they're having an issue with a juror. We'll either hear about it again specifically as to what the issue is or this is going to resolve it.  There may be a juror who is under an impression about one thing versus another and, again, I don't think we should assume that this is all towards the government.  I think this kind of is equally towards the defense.

MS. BENETT:  Understood.  That's why I don't want to needlessly remind the jury when the note doesn't reflect that there's somebody who is saying, for example, I cannot as a

I6IBSHU3

matter of conscience judge another person, which would warrant the putting aside religious beliefs or philosophical beliefs. So my concern is just articulating that instruction without the reminder to the jury.

THE COURT:  Well, there's lots and lots of little things that they could be doing, which I have experienced before.  They could also be saying that they have a problem with a government informant doing a sting operation.  That is a philosophical belief that is actually not consistent with the law.  We don't have to get there and I don't think we want to go down that road at this point.  I think we should take it step by step at the highest level possible and give them this version.

MS. BENETT:  We would prefer, from the defense side, just a re-instruction on role of the jury and inferences.

THE COURT:  Let's bring the jury on out.  Mr. Cecutti, I assume you're joining in Ms. Benett's --

MR. CECUTTI:  Yes, I am.

THE COURT:  Thank you.

We're going to wait two minutes.  We're waiting for the jury.  We do some smoker in the jury apparently and they've gone to smoke a cigarette.  Why don't we take a break?  That could be a varying duration of time.  Let's take a short break. Don't go anywhere.  As soon as they're ready, we can forward and proceed.

I6IBSHU3

MS. BENETT:  Can Mr. Pecorino show us a copy of the note?

THE COURT:  Yes.

(Recess)

THE COURT:  So we've got an assembled jury now.  Let's go ahead and bring them out.

(Continued on next page)

I6IBSHU3

(Jury present)

THE COURT: All right, ladies and gentlemen. As you reach your seats, let's all be seated.

We've received a note from the jury and I'll read it to you and then we'll answer your question. The note states, "Your Honor, the jury is deliberating and one of the jurors is using non-law principles to come to a conclusion in this case. Is this something we have to sort through or is this a case an alternate needs to be called?" Signed by the foreperson.

So let me remind you of a few instructions and then give you some guidance and then send you back into the jury room.

First of all, as I instructed you at the very, very outset of the case during voir dire and asked you folks to confirm if you had any issue with this, that under our system of law, the facts are for the jury to determine and the law is for the Court. These two areas are separate and distinct and that you are required to accept the law as I explain it to you. It will be your job to determine the facts under my explanation of the law. And then each juror was asked whether or not they could accept that proposition. All of you were sworn as jurors on the faith of your answers at that time.

Another question that I asked during voir dire is under what's called ability to serve. And you were asked, "Do

I6IBSHU3

you have any religious, philosophical, or other beliefs that would make you unable to render a guilty verdict if the evidence in this case, in fact, supported it?"

Now, during the jury instruction process itself at the end of the case on page 4 of the instructions that you folks have received, there is the following instruction referring to the role of the Court and a separate instruction on the role of the jury. On the role of the Court, I'm only going to refer you to a piece of it right now, but I encourage you to read the entirety of that instruction if you would find it helpful. I instructed you, "On these legal matters, you must take the law as I give it to you. Regardless of any opinion that you may have as to what the law may be or ought to be, it would violate your sworn duty to base a verdict upon any other view of the law than that which I give to you." And then I went on, "If an attorney or anyone else at trial has stated a legal principle different from that which I state to you, it's my instructions that you must follow."

In addition, of course, there are instructions on the jury's role, and those I would refer -- you to throughout the instructions there's lots of places where the jury's role is referred to, but on page 5 and where there are descriptions of inferences and competing inferences that may appropriately be drawn on pages 14 and 15, are certain instructions are that useful.

I6IBSHU3

But the role of the jury, it says, "You are the sole and the exclusive judges of the facts. You pass upon the weight of the evidence or lack of evidence, you determine the credibility of the witnesses, you resolve such conflicts as there may be in the testimony, and draw whatever reasonable inferences you decide to draw." Then there's a statement about what evidence there is that these inference are being drawn from. The evidence before you consists of the answers given by witnesses and the exhibits and stipulations that were received into evidence.

Then there are inferences and a description of reasonable inferences that can be drawn and competing inferences on pages 14 to 15. So in short, you are required to put to the side personal views of a philosophical, religious, or other personal nature that are inconsistent with the law as I have instructed you on. That doesn't mean that you leave behind your common sense. It doesn't mean that you leave behind what you bring to the essential role of being a jury. If the issue that you're talking about is a matter of competing factual inferences, then it is up to you, the jury, to determine whatever factual inferences based upon the evidence that you deem appropriate.

With that said, and of course as you know from the jury instructions, it's up to you folks to weigh the evidence and to apply the law as I have instructed you. If there are

I6IBSHU3

any remaining issues, send me another note, but with those instructions, I send you back to the jury room.

Thank you very much.

(Continued on next page)

I6IBSHU3

(Jury not present)

THE COURT:  All right, ladies and gentlemen.  I have received notes exactly like this, almost, in the last six jury trials that we've done, six criminal jury trials.  So this is not unusual.  It happens particularly early in a case.  We'll take it step by step and see where it goes.  We'll come back when we have the next note.

Thank you.

(Recess)

(Continued on next page)

I6IBSHU4

THE COURT:  All right, ladies and gentlemen.  Let's bring out the jury.

The jury would like another ten minutes.  So since we had told them it will be 5:00, then we'll wait until five.  Sometimes we can also let them out at a quarter to five.  So they want ten minutes.  Don't go far.  At exactly five we'll get them out.

Thank you.

(Recess)

THE COURT:  All right, ladies and gentlemen.  The jury would like to go home for the day.  Let's go ahead and bring them out.

(Continued on next page)

I6IBSHU4

(Jury present)

THE COURT:  All right, ladies and gentlemen.  Let's all be seated.  I'm going to give you your instructions for the evening.  I want to remind you that even though you're talking to each other about the case when you're in the room together, you're still not to talk to anybody outside of your respective colleagues here on the jury about the case until you're done.  So tonight when you go home, don't discuss the case, please, with anybody.

Tomorrow morning you'll go straight to the jury room and you'll begin deliberations once everybody's arrived.  If somebody is late, let the marshals know, because we've got the cell phones and we can sort of call and see if the person is on the train or what the situation is.  Don't just wait around until 11:00 not knowing what's happening.  If somebody has gotten a flu, we will find that out and we will take the appropriate steps.  Please do let us know if somebody is later than you expect them to be.

Otherwise, tomorrow morning at 9:30, you will go in.  We will not call you out here first.  You'll go and when you're assembled, you will begin deliberations and we'll wait for a note.

Thanks, folks.  See you tomorrow.

(Continued on next page)

I6IBSHU4

(Jury not present)

THE COURT:  All right, ladies and gentlemen.  So we'll resume tomorrow.  I will just ask people who are here and who want to be present here for notes and for the verdict to be present at 9:30.  But there's no reason to be present before that.  I'll see you folks in the morning.

Anything anybody wants to raise?

See you in the morning.

(Adjourned to June 19, 2018, at 9:30 a.m.)

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300